UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD T. LINDEN,

    Plaintiff,

v.

CITY OF DETROIT and
JEROLD BLANDING,

    Defendants.

_____/

Case No. 2:19-cv-13684
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (ECF No. 20)

**A.    Background**

On December 16, 2019, Plaintiff Howard T. Linden, as personal representative of the Estate of Raynard Burton, initiated this lawsuit under 42 U.S.C. §§ 1983 and 1988 for excessive force as well as failure to train, failure to supervise, and deliberate indifference against Defendants the City of Detroit and Jerold Blanding, in relation to the shooting death of Raynard Burton by then Detroit Police Officer Blanding. (ECF No. 1.)

**B.    The Instant Motion**

Currently before the Court is Plaintiff's March 19, 2021 motion to compel (ECF No. 20), which Judge Edmunds referred to me that same day (ECF No. 21). Plaintiff seeks an order compelling the production of investigative files, originally

requested in Plaintiff's January 29, 2021 second request for production of documents, for the following incidents:

  a. The incident alleged in the Complaint;

  b. The Narcotics raid that Defendant Blanding noted during his deposition;

  c. The shooting at the bank concerning Johnny Cranshaw that Defendant Blanding noted during his deposition, believed to have occurred in 1998;

  d. The 2015 Parker shooting that Defendant Blanding noted during his deposition;

  e. The off-duty shooting at a club, noted by Defendant Blanding during his deposition, believed to have occurred in 1997;

  f. The firing of his weapon in a vacant building, noted by Defendant Blanding during his deposition, that he believed occurred in 1994;

  g. The 2001 investigation of Defendant Blanding concerning an alleged assault of a female officer;

  h. The 2002 investigation of Defendant Blanding concerning allegedly making threats;

  i. The 2003 investigation of Defendant Blanding for excessive use of force; and

  j. The investigation of Defendant Blanding for a 2004 shooting while working in drug enforcement.

(ECF No. 20, PageID.77-78; Exhibit 1, ECF No. 20-2, PageID.90.) On March 1, 2021, Defendants objected to the above requests for production on the basis of relevance and privilege (Exhibit 2, ECF No. 20-3, PageID.93-94), and have since

2

produced only the Final Administrative Review for the incident alleged in the complaint (in response to Request to Produce No. 1, subpart a.), with the "Policy Violations" and "Tactical Analysis" portions redacted (Exhibit 3, ECF No. 20-4; ECF No. 20, PageID.78-79).

Defendants filed a timely response in opposition to the instant motion (ECF No. 23), the parties filed a joint list of unresolved issues (ECF No. 27), and a hearing via Zoom technology was held on May 5, 2021, at which counsel appeared. The Court entertained oral argument, ultimately taking the motion under advisement. Following the hearing, the Court entered a text-only order that Defendants obtain and submit to the Court for *in camera* review those documents requested in Request to Produce No. 1, subparts a.-f. and i.-j., listed above, for the Court to make its final determination regarding discoverability of each of the documents. The Court directed Defendants to highlight those portions of the documents over which they sought to assert the deliberative process privilege. For all of the reasons stated on the record, <u>and hereby incorporated by reference as though fully restated herein</u>, as well as the reasons provided below, Plaintiff's motion to compel (ECF No. 20) is **GRANTED IN PART** and **DENIED IN PART**.

**C.     Discussion**

    **1.     General discoverability**

3

First, for the reasons provided on the record and below, the Court finds that the documents sought in Plaintiff's Request to Produce No. 1, subparts a.-f. and i.-j., but not g.-h., are relevant and discoverable.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). And relevant to the instant motion, a plaintiff is generally entitled to "discovery of all disciplinary factual findings and disciplinary actions taken" against police officers, "regardless of whether or not they related to the claims in [the] case." *Sanford v. City of Detroit*, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019).

> However, as to allegations and unsubstantiated complaints that have not resulted in discipline, the scope of relevance and discovery is narrower. In *Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006), the Court explained that records of unsubstantiated misconduct are discoverable under two theories of relevance: (1) to provide defendants' intent, and (2) to prove municipal liability under *Monell* [*v. Dep't of Social Servs. Of City of New York*, 463 U.S. 658 (1978)].

*Sanford*, 355 F. Supp. 3d at 622.

With regard to intent, "discovery of unsubstantiated complaints or complaints that did not lead to discipline are relevant only if they involve the same type of conduct alleged in the complaint." *Id*. at 623; *see also Frails*, 236 F.R.D. at 117 ("Disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable."). "'Unsubstantiated instances of misconduct not related to the allegations raised in the instant complaint are not reasonably likely to lead to such evidence, and need not be produced.'" *Sanford*, 355 F. Supp. 3d at 623 (quoting *Frails*, 236 F.R.D. at 118).

Here, the Court finds discoverable the documents sought in Plaintiff's Request to Produce No. 1, subparts a.-f. and i.-j. (ECF No. 20, PageID.77-78; Exhibit 1, ECF No. 20-2, PageID.90.) Although some of the incidents listed in those subparts occurred several years prior to the subject incident, they are related to the allegations in the complaint because they involved the use of excessive force in the line of duty and the discharge of a weapon on or off duty. The investigative files are also relevant for purposes of impeaching credibility and to Plaintiff's punitive damages and *Monell* claims. (ECF No. 1, PageID.6-9, ¶¶ 25-31.) *See Parnell v. Billingslea*, No. 17-cv-12560, 2018 WL 2275236, at *2 (E.D. Mich. May 16, 2018) (finding a request for disciplinary files relevant to the plaintiff's *Monell* claim). In contrast, the incidents which are the subject of Request to

5

Produce No. 1, subparts g. and h. do not involve the use of excessive force in the line of duty or the discharge of a weapon while on or off duty and, thus, are not relevant to the allegations in the complaint.

2. **Deliberative process privilege**

The Court made the above ruling on the record, but must now decide, based on its *in camera* review of the documents Defendants submitted in response to Request to Produce No. 1, subparts a.-f. and i.-j. and the above ruling, if the highlighted portions are properly protected by the deliberative process privilege. In so doing, the Court notes Defendants' bare assertion of the privilege in response to the instant motion to compel (ECF No. 23, PageID.106-107), asserting the privilege for documents other than those requested in subpart a. at the hearing only, and failure to submit a privilege log. On that basis alone, the Court could have rejected Defendants' assertion. Nevertheless, it determined that an *in camera* review of the documents would be appropriate.

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1974). "The primary purpose served by the deliberative process privilege is to encourage candid communications between subordinates and superiors." *Schell v. U.S. Dep't of Health and Human Servs.*, 843

F.2d 933, 939 (6th Cir. 1988). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' . . . by protecting open and frank discussion among those who make them within the government." *Dep't of Interior & Bureau of Indian Affs. v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001).

The privilege, however, is not absolute and is narrowly construed. *Gen. Motors Corp. v. United States*, No. 07-14464, 2009 WL 5171807, at *1 (E.D. Mich. Dec. 23, 2009) (Roberts, J.). Here, I am informed by an oft-cited decision which reflects upon "sources of confusion in analysis of assertions of privilege by law enforcement agencies," in part, as follows:

> Similarly, courts could apply the "deliberative process" privilege to most kinds of information generated by police departments only if they are willing to stretch, in some instances almost beyond recognition, the policy rationale that supports that privilege. As originally developed, the deliberative process privilege was designed to help preserve the vigor and creativity of the process by which government agencies formulate important public policies. *See, e.g., Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881-82 (5th Cir. 1981). The principal idea that inspires the privilege is that the people who contribute to *policy* formulation will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies, and will be less shy about suggesting bold, creative (and sometimes hairbrained) policy alternatives, if they know that their work is not likely to be disclosed to the public. As I will suggest below, it is not at all clear to me that the basic assumption that informs the body of law is well-made. For present purposes, however, the point is this: the

7

rationale that supports this privilege should fix the limits of its reach. The "deliberative process" privilege should be available only to communications that contribute to a deliberative process.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 658-59 (N.D. Cal. 1987) (Brazil, M.J.) (emphasis in original).

As described somewhat more recently by our Court of Appeals:

> To come within [the] deliberative process privilege, a document must be both "predecisional," meaning it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "deliberative," the result of the consultative process. Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of the agency, the key issue in applying this exception is whether disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency. . . .

*Rugiero v. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (internal quotations and citations omitted).

3.     **Analysis of documents at issue**

As provided above, the Court ordered Defendants to obtain and submit to the Court for *in camera* review those documents responsive to Request to Produce No. 1, subparts a.-f. and i.-j., which Defendants did, highlighting those portions of the documents they assert are privileged and should be redacted. Some documents produced have highlights, while most do not. The Court will address only those documents with highlights.

8

### a. Exhibit A- responsive to Request to Produce No. 1, subpart a.

Exhibit A is the Force Investigation Final Administrative Review (labeled an "Inter-Office Memorandum") for the incident at issue in Plaintiff's complaint. The document was ultimately prepared and signed by Sergeant Allan Jacokes for Commander Marlon C. Wilson of the Professional Standards Bureau, although the "Introduction" states, "[T]he majority of this investigation, including this final administrative review, was completed by Sergeant [Kyle] Bryant." Page 28 includes a "Final Recommendation" signed by Sergeant Jacokes, which states, "I am requesting and recommending a finding of '**Exonerated**', and that Force Investigation Case# 17-002 be '**Administrative Closed**' due to Officer Blanding's retirement paperwork completed on September 20, 2018 to 'Retire Under Criminal Charges.'" (emphases in original). And on the next page is a "First Endorsement" signed by Lieutenant Jeffrey Hahn concurring in the result.

First, the Court finds that the personal information Defendants highlighted on Page 3 should be redacted in accordance with *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998).

> [I]n *Kallstrom*, the Sixth Circuit found that *police officers* have a constitutionally protected privacy interest in certain personal information that under certain circumstances outweighs the need for disclosure. Specifically, the Court found that disclosure of the officers' "addresses, phone numbers, and driver's licenses and the officers' families' names, addresses, and phone numbers" would increase the risk of harm to the officers and their families.

*Sanford*, 355 F. Supp. 3d at 621-22 (emphasis added) (citing *Kallstrom*, 136 F.3d at 1067). The personal information highlighted on Page 3 of Exhibit A is Defendant Blanding's pension number.

However, the Court finds that only *some* of the personal information Defendants highlighted on Pages 15-17 is properly redacted. The information includes the phone numbers and birthdates of third parties and, thus, is not covered under the privacy interest articulated in *Kallstrom*. As the third parties' ages remain unredacted, the Court sees no issue with redacting the birthdates. In contrast, the Court finds that the phone numbers of the third party witnesses should remain unredacted, in light of Defendants' failure to assert the application of a specific privilege to this information and the fact that these individuals could arguably be witnesses here.[1]

---

[1] Defendants never specifically asserted the law enforcement privilege which preserves the government's ability to "withhold from disclosure the identity of persons who furnish to law enforcement personnel information concerning violations of law." *Holman v. Cacye*, 873 F.2d 944, 946 (6th Cir. 1989) (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957) and 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2019 (1970)). In their objection to Request to Produce No. 1, they only generally stated: "Defendants object to this interrogatory because it seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of this case. Defendants object to this interrogatory to the extent that it seeks information protected by the deliberative process, attorney-client, work product *or other privilege*." (ECF No. 20-3, PageID.94 (emphasis added.) The boilerplate language "or other privilege" does not "expressly make the claim" or "state with specificity the grounds for objecting to the request," as required by Fed. R. Civ. P. 26(b)(5)A)(i)(ii) and 34(b)(2)(B).

The next highlighted section, on Page 27 and labeled "Policy Violations," contains the language of a Detroit Police Manual Directive and what the Court assumes is Sergeant Jacokes's conclusion regarding whether Defendant Blanding violated the policy. Although Defendants argued on the record and in their response to Plaintiff's motion to compel (ECF No. 23, PageID.106-107) that this portion of the Final Administrative Review is protected by the deliberative process privilege because it is predecisional and deliberative, representing Sergeant Jacokes's analysis and opinion, the Court disagrees. A review of the section reveals that it is simply a brief and straightforward application of the quoted Directive to the facts of the incident described in great detail throughout the Final Recommendation. And as purely factual information, it is unprotected by the deliberative process privilege. *See Perry v. City of Pontiac*, No. 07-14036, 2011 WL 4345239, at *6 (E.D. Mich. Sept. 16, 2011) ("The privilege protects 'advisory materials which truly reflect[] the deliberative or policymaking processes of an agency, but would not protect "purely factual, investigative" material.'") (quoting *Schell*, 843 F.2d at 940). There is no real deliberation, opinion, or analysis here.

The final highlighted section in Exhibit A is on Pages 27-28 and is titled "Tactical Analysis." The Court finds that this section is predecisional, as it is Sergeant Jacokes's recommendation regarding the incident, which was relied upon by Lieutenant Hahn to make his "First Endorsement" to the final decisionmaker,

11

but that only certain portions of it are deliberative, representing Sergeant Jacokes's opinion regarding Detective Blanding's use of force in the subject incident. The entire first paragraph on Page 27, the first sentence of each of the second and third paragraphs on Pages 27-28, and all but the sentence containing the quotation in the final paragraph on Page 28, are purely factual and, thus, unprotected by the deliberative process privilege. *See Perry*, 2011 WL 4345239, at *6. The first paragraph is simply a statement of Detroit Police Department manual policies, the first two sentences in paragraphs 2 and 3 briefly summarize Defendant Blanding's description of the subject incident, and all but the final sentence in paragraph 4 is a summary of the facts recited earlier in the document. The rest of the "Tactical Analysis" is, however, predecisional, deliberative, and properly redacted, as it represents *Sergeant Jacokes's opinion* regarding Detective Blanding's use of force in the subject incident. *See Nelson v. City of Madison Heights*, No. 13-10632, 2015 WL 13022177 at *3 (E.D. Mich. Jan. 12, 2015) (Hluchaniuk, M.J.) ("Bates page 659 is a portion of a report prepared by retired Lt. Wiedle regarding the Rusty Cernuto incident on May 2, 2010, and redacted from the report are the opinions and recommendations by Lt. Wiedle regarding the incident. This report was relied on by then Deputy Chief, now Chief, Roberts in making his recommendation to then Chief Sagan, the ultimate decision-maker. The redacted portion of this document reflects the 'opinion and recommendation' of Lt. Wiedle. (PgID.1032-

33). Opinions and recommendations in these circumstances are deliberative and, in that they precede the final decision that was made regarding Officer Koehler, they are pre-decisional.").[2]

Plaintiff argued on the record, and in the motion itself (ECF No. 20, PageID.79, 83-85), that the deliberative process privilege cannot apply here because "[t]he United States Supreme Court just recently held, on March 4, 2021, that the deliberative process privilege does not apply to documents that embody a final decision," citing *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S.Ct. 777 (2021). But that opinion does not alter this Court's conclusion, or the established law regarding the deliberative process privilege, in any way. *See Sierra Club, Inc.*, 141 S.Ct. at 785-786 (The deliberative process privilege "does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done. The privilege therefore distinguishes between predecisional, deliberative documents, which are exempt

---

[2] The final page of Exhibit A, Page 29, contains an unredacted section titled "First Endorsement," signed by Lieutenant Hahn, which states that he reviewed Sergeant Jacokes's investigation and Final Administrative Review, and provides a brief explanation as to why he ultimately endorsed Sergeant Jacokes's recommendation. This differentiates it from a situation in which the final decisionmaker simply adopts the recommendation at issue, thus removing the recommendation from the protection of the deliberative process privilege. *See Nelson*, 2015 WL 13022177 at *3. The page then contains stamps of approval and signatures from the Captain of Internal Controls and the Professional Standards Bureau, who appear to be the final decisionmakers.

from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not."). The limited, opinion-laden portions redacted here are pre-decisional and do not reflect the agency's final decision.

> b. **Exhibit E – responsive to Request to Produce No. 1, subpart b.**

Exhibit E is the Force Investigation Final Administrative Review related to a 2015 incident in which Defendant Blanding fired his weapon at a suspect driving toward another officer. The document was prepared by Sergeant Laurie A. Carter for Commander DeShaune S. Sims of the Professional Standards Bureau.

First, for the same reasons provided above, the personal information Defendants highlighted on Page 7 should be redacted, as it is Defendant Blanding's pension number, *Kallstrom*, 136 F.3d at 1067, but only the birthdates of the third parties highlighted on Pages 23-26 should be redacted. The phone numbers of the third party witnesses should remain unredacted. Additionally, and also for the same reasons as provided above, the Court finds that the only other highlighted section—labeled "Policy Violations" on Page 36—is not protected by the deliberative process privilege. Like that in Exhibit A, the section quotes a specific Department Directive and contains Sergeant Carter's objective conclusion regarding whether Defendant Blanding violated that Directive. Contrary to Defendants' assertion, a review of this section reveals that it is purely factual in nature and, thus, unprotected by the privilege, *see Perry*, 2011 WL 4345239, at *6,

14

as Sergeant Carter's application of the Directive to the facts relies entirely on Defendant Blanding's representation of a specific fact. The Court sees no real opinion or analysis here. Accordingly, Defendants must produce Exhibit E to Plaintiff in its entirety.

### c. Exhibit I

This is another Final Administrative Review, but Defendants only highlighted personal information on Pages 2-4 related to police officers. Accordingly, under *Kallstrom*, 136 F.3d at 1067, this information is appropriately redacted.

## E. Order

In sum, Plaintiff's motion to compel (ECF No. 20) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendants must produce to Plaintiff, by **Monday, June 28, 2021**, the Exhibits included in the *in camera* review, in full, with the exception of the personal information redactions on Page 3 of Exhibit A and Page 7 of Exhibit E, and Pages 2-4 of Exhibit I, the birthdate redactions on Pages 15-17 of Exhibit A and 23-26 of Exhibit E, and the "Tactical Analysis" redactions described above with regard to Pages 27-28 of Exhibit A. No costs are awarded, neither party having prevailed in full. Fed. R. Civ. P. 37(a)(5)(C).[3]

---

[3] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within

**IT IS SO ORDERED.**

Dated: June 18, 2021

_[signature]_
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

---

which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).